IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

KENNETH W. ADKINS,

        Plaintiff,

V.                                          CIVIL ACTION NO. 3:05-0664

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

## FINDINGS AND RECOMMENDATION

In this action, filed under the provisions of 42 U.S.C. §§405(g) and 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed his applications on January 31, 2003, alleging disability commencing July 31, 2001, as a consequence of anxiety, shoulder and neck problems, stiffness in the back, legs and arms, and a learning disability. On appeal from initial and reconsidered denials, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was twenty-six years of age and had obtained an eighth grade education. His past relevant employment experience consisted of work as a general laborer and pizza worker/deliveryman. In his decision, the administrative law judge determined that plaintiff suffers from "depression/anxiety, chronic low back pain," impairments which he considered severe. Concluding that plaintiff had the residual functional capacity for a limited range of light level work and that his past work mowing grass at a golf course was not precluded by these limitations, the administrative law judge found plaintiff not disabled. Alternatively, and in reliance on Rule 202.18 of the medical-vocational guidelines[1] and the testimony of a vocational expert, the administrative law judge found that, if plaintiff was unable to perform any past work, he would still not be disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. Plaintiff testified that he is mainly prevented from working by physical problems and specifically back pain, pain and restricted use of his right ankle and loss of grip strength in his dominant left hand. He indicated the back pain does go down his leg and that he sometimes experiences pain between his shoulder blades and in the neck area. He estimated he could stand up to one hour if allowed to move around and be active, lift at least a case of pop, sit for awhile once able to get seated, but walk only about twenty yards. He related his hobby is fishing and he has a girlfriend.

Plaintiff's mother testified he was slow to develop as a baby and was in learning disabled classes in school. After being kidnapped at age seven by his father, plaintiff began to experience panic attacks. She claimed he never did learn to write very well with his left hand and

---

[1] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2.

was a poor reader. Though plaintiff has lived on his own at various times, his mother indicated she checked on him every day and he stayed in frequent contact with her. She also closely helped him manage his bank account and pay his bills.

The administrative law judge indicated that, because of his previous applications and adjudications, the dates he considered in this case were from December 27, 2002, one day after the decision on a prior application, through April 30, 2004, the date his decision was entered.

The medical evidence reflects treatment in 1992 to repair the Achilles tendon in the right ankle after a bicycle accident. Plaintiff reinjured the ankle in June 2001 and was diagnosed with right ankle sprain with "passive underlying chronic process." During a consultative examination on February 7, 2002, plaintiff had an antalgic gait, limited range of motion and an absent reflex in the right ankle. The examiner concluded that because of the foot drop resulting from the Achilles tendon injury, plaintiff had a problem ambulating and doing his normal chores. Plaintiff had also reported he was using a cane to correct the imbalance he experienced. Despite this, however, none of the doctors who examined him documented any atrophy or loss of strength in the leg consistent with lack of use. In late 2002, plaintiff sought treatment for his ankle at Ebenezer Medical Outreach. An orthopedic surgeon evaluated it in early 2003, but it was hard for him to determine anything about the right ankle because plaintiff had "some walking disorder" on the left side. He did find plaintiff had difficulty walking on the toes on both sides. Though this physician indicated he was going to order an MRI of the ankle, it is not clear from subsequent reports what the results of the test were.

The Commissioner sent plaintiff for a consultative examination with Dr. Gobunsuy on April 30, 2003, for evaluation of complaints of neck, back, right ankle and left hand pain. Exam

revealed plaintiff was comfortable in the sitting and supine positions and displayed an antalgic gait favoring the right leg. He was unable to walk on his toes or to squat but could do heel-to-toe tandem walking. He was able to stand steadily on the left but not the right leg and to pick up a coin and write his name with the left hand without apparent difficulty.

Exam revealed tenderness only at the C6-7 level in the cervical spine and in the left hand. Range of motion in the cervical spine was only "slightly" affected. Dr. Gobunsuy commented that there was no atrophy in the left hand or arm muscles, and an X-ray showed no indication of significant degenerative arthritis in the hand. Again, no evidence of right leg muscle atrophy was found.

In October 2003, plaintiff began treatment with Dr. David Whitmore at Wayne Health Services. He complained of diffuse joint pain in multiple areas with morning stiffness which got better during the day. Plaintiff was taking only over-the-counter medications. On exam, Dr. Whitmore found no evidence of joint effusions, joint erythema, joint deformities or warmth over the joints. Range of motion was termed "good" in all joints, although plaintiff complained of pain with movement of nearly every joint. Strength was full and reflexes equal in the upper and lower extremities. Dr. Whitmore diagnosed nonspecific arthritis and put plaintiff on Celebrex. When plaintiff returned one month later, he reported this medication had helped but he still had some back pain. Exam revealed only mild paraspinal muscle tenderness with a negative straight leg raising test. Arthralgia, much improved on Celebrex, and lumbago were diagnosed. X-rays of the dorsal and lumbar spine were obtained and interpreted as showing only mild levoscoliosis in these areas.

Mentally, plaintiff testified that he felt depressed or anxious most of the time, but there is no evidence of mental health treatment. David Frederick, Ph.D. performed a consultative psychological evaluation on April 29, 2003, and diagnosed anxiety disorder, NOS, dysthymia and borderline intellectual functioning. Plaintiff was cooperative, well-motivated, had normal concentration and interacted well, although his mood was sad, judgment was moderately limited and testing suggested recent memory was severely deficient. Dr. Frederick considered plaintiff's activities of daily living to be within normal limits, along with his concentration, persistence and pace and did not comment on social functioning. State agency psychologists who reviewed the record concluded plaintiff did not have a "severe" mental impairment.

The administrative law judge, after considering this evidence, assessed plaintiff as capable of light level work requiring standing/walking four to six hours total per day and sitting four to six hours per day, alternating positions. He further found plaintiff could perform only simple and repetitive tasks with limited social interaction and low to moderate levels of stress and frustration. This finding clearly has substantial support in the record.

Plaintiff submitted additional evidence to the Appeals Council relative to MRI's of the cervical, thoracic, and lumbar spine performed on June 4, 2005, more than thirteen months after the date of the administrative law judge's decision. These showed fusion at the C2/3 level of the cervical spine with disc bulging at C3/4 and C5/6; borderline disc bulging from L2 through L5 with some minimal "discogenic change" at the L3/4 level; wedge shaped discs at the T7 through T9 levels with "very subtle" protrusion or extrusion at T3/4, T4/5, T7/8 and T8/9. The Appeals Council considered this evidence and determined it was "consistent with the medical findings and opinion already of record... ." Plaintiff disputes this finding, however, and alleges this evidence provides

a basis for reversal or remand. The Court agrees with the Appeals Council. Even though the MRI results, taken at a time well after the date of the administrative law judge's decision, revealed multiple abnormalities, plaintiff has submitted nothing to suggest that exam findings reflect anything more limiting than during the period considered by the administrative law judge. The Court concludes, therefore, that the evidence supports the Appeals Council's conclusion that this additional evidence does not provide a basis for changing the administrative law judge's decision.

While plaintiff described significant limitation on his activities due to pain, the administrative law judge, taking account of the evidence, as well as his observations of plaintiff at the hearing, and noting the inconsistencies between the medical evidence and plaintiff's complaints, concluded that his testimony was less than fully credible. Persuasive to him were laboratory and clinical findings which do not corroborate plaintiff's testimony about the nature and extent of his limitations. In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," these findings are entitled to "great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Finally, in response to hypothetical questioning which included plaintiff's age, education, work experience and a reasonably accurate profile of his functional capacity and overall medical condition, a vocational expert testified that plaintiff could perform his past work as a grass cutter as well as significant numbers of light and sedentary jobs in the national economy. While the administrative law judge found that plaintiff could perform both his past work and the other jobs cited, the Court concludes that the administrative law judge's analysis of plaintiff's past work in light of his current residual functional capacity is insufficient[2] and this finding is not supported by

---

[2] See, 20 C.F.R. §416.920(f).

the evidence. It is apparent, however, that plaintiff can perform the other light and sedentary jobs which the vocational expert listed.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's findings are supported by substantial evidence this Court is bound to uphold the decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). In the present case, the evidence, though somewhat conflicting, provides substantial support for the Commissioner's findings with respect to plaintiff's impairments and residual functional capacity. Under such circumstances, the decision of the Commissioner should be affirmed.

## RECOMMENDATION

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted and the decision of the Commissioner affirmed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection

is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to all counsel of record.

DATED: March 9, 2007

MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE